I am here on behalf of Mr. Grnacek. My client is an old friend of mine, known for 40 years. It is my belief, after reviewing the evidence and reading the applicable law that applies, that he has been deprived of a fair trial before an impartial judge. I hope to be able to convince you to share my belief and reverse this case and send it back to Joliet for a new trial. The issues I have presented in my brief involve the Sixth Amendment, the right to confront witnesses, and the Fifth Amendment, the due process clause. On the confrontation issue, there are three areas that I have raised in my brief. I would like to touch on them briefly. The first involves bias. Ira Goldstein, the attorney for the defendant, Mr. Grnacek, asked the occurrence witness, whose name is Kylie Murphy, what her current residence was, that she was in Will County Jail. He wanted to question her about her incarceration or why she was in jail, but goes to the issue of leniency or bias. The state objected, saying, well, she's not in jail for any conviction and you shouldn't be able to go into character, witnesses, etc. My point, and I've cited the People v. Davis case, the point is that evidence of bias, promises of leniency, or expectations of leniency, are a matter for cross-examination. And they don't have to actually exist. They don't have to prove that there's an actual promise made. It's sufficient that you can show that the witness has something to gain or lose by testifying. That's the first point. The second point… Let me ask you this. What would she have said had she testified? What would she have said? Yes. Well, I'm getting to that right now. The next point is what I'm getting at. On leniency, you should have been allowed to ask her if she had any expectations of privilege or benefit of that nature. If she could have said yes, she could have said no. The point there is, according to the Davis case, that it creates an inference that you have something to gain or lose. That's the point of the People v. Davis case. The next issue, though, is drug addiction. Ms. Murphy was in Will County Jail for possession of heroin and delivery of same. And Mr. Goldstein wanted to ask her about her addiction to heroin. And the state objected, saying that you can't do that, that that's improper. Judge Vermilla said, well, it's improper to show addiction to drugs, and that's a proper method of impeachment. But he was under the impression that you had to show active use of drugs in order to bring it out for impeachment. He continued the case and allowed the attorneys to present case evidence to show what the state of the law was. When the case was recalled again the next day, he continued it over to the next day, Mr. Goldstein made an offer of proof, which I've put in my brief, and it's really simple offer of proof. He said that he spoke to the witness, Kylie Murphy, that she was in jail, that she wanted to apply for TASC, which is Treatment Alternative to Street Crime. And his point was that if you were applying for TASC, meaning you were an addict, and therefore he should have been allowed to bring out that on cross-examination that she was addicted to heroin. Judge Vermilla said, after he made his offer of proof, Judge Vermilla said, so long the court believes that the current state of the law remains the same, the witness must be an active addict, and attempt to impeach the witness on that basis, that's going to be denied, your objections will be sustained, state's objections will be sustained, but you've made your record. Judge Vermilla, on this particular instance, excuse me, is, in my opinion, and I'm urging the court to share their opinion, is just that wrong. We cited the DeMaso case, which shows that the addiction goes to credibility, and grant general power to observe, and inclination to tell the truth, and the broadest possible cross-examination ought to be allowed. Furthermore, the Galloway case, which I cited in my brief, says that a person can be an addict without active use of narcotics, at the time that she testifies or he testifies. That's the Galloway case. The effect of addiction on the DeMaso case, quote, the effect of addiction on the ability to observe accurately, reflect, and retain what was observed, and the general power and inclination towards truthfulness, all bring into focus the concern over the credibility of the addict's testimony. The DeMaso case is interesting because it shows where it has a person who was treated for heroin addiction, and at the time he testified, it was two months after his treatment, and the appellate court says that's not too remote as to bring that up, the fact of the person's addiction. In this case, before the board of this court, Kylie Murphy was in jail for six weeks. Apparently, we have to assume that she was not using heroin, and Judge Vermilla says, well, she's going to be an active user at the time she's testifying, therefore, I'm going to disallow this testimony. I'm submitting that that was error, and it's a serious error. The last issue on confrontation is the scope of cross-examination and redirect. Ira Goldstein finished his cross-examination, and on redirect, Attorney Brown, who was the prosecutor, started to ask Kylie Murphy about her opinion as to whether Granasik was drinking, how much he had to drink, and whether he was under the influence of alcohol. Mr. Granasik objected, saying it was beyond the scope of his cross-examination. Significantly, Judge Vermilla said, yeah, you're right, it is beyond the scope of the cross-examination, but you've tested this witness's ability to recall, and I'm going to let the state's attorney test Mr. Granasik's ability to recall, and he said, so he could ask her these questions, her observation of the defendant as to whether his recollection of the owner's being there and things of that nature would be accurate. The problem with Judge Vermilla's ruling in this case, why it makes it so egregious, is at the time that he made this ruling, Granasik had not testified. So his credibility at that particular time was not an issue. We're still in the state's case, Granasik had not even testified. So in summation at this point in the Confrontation Clause, the drug use and the testimony beyond the scope of the cross-examination are two of the egregious errors that deprived him of his right to confront witnesses. Is there any other questions on this issue before I go on to the next one? Well, on that last one, was there a request for recross? Yeah, Mr. Goldstein did recross the witness, yes, and did bring up the fact that she did not smell alcohol on his breath, she really wasn't paying attention to what he was drinking, and that type of thing. So he did get to confront that witness. He did confront her, but he shouldn't have had to, is my point. And it was improper because Granasik's credibility wasn't an issue at that particular point. Is there any other questions? The next issue I have is the judicial impropriety, which is a Fifth Amendment due process issue. The accuser, Karen Miller, was under subpoena and did not appear in court. Prosecutor Brown indicated to the court that she was under subpoena, but she was not here. They went ahead with the case and asked her to, when it was time for the witness to call, for her to be available if she wanted to deal with it at that particular time. Bottom line is, at the time, he called her, it was her turn to testify. I'm stuttering here, I'm sorry. When it was her turn to testify, she wasn't there. Judge Brown Miller asked if she was under subpoena, can I see the subpoena? He handed up what was a faxed copy of the subpoena, it was not the original. Mr. Granasik and Mr. Goldstein objected to, on the best evidence, that it was a copy, it was not the original. That objection didn't go very far. The other objection was more significant, and that is the fact that the subpoena was not sworn to, there was no affidavit in support of the service, and it was not notarized. I cited in my brief the fact that for an affidavit to be, well, Supreme Court Rule 12 governs service of process, which is a subpoena or a complaint. It requires an affidavit. The case I cited, the Seth case, says that an affidavit, there's no affidavit unless there's a notarization. Do you have standing to raise this issue? Pardon, Judge? Do you have standing to raise this issue? Do I have standing to raise this issue? It's jurisdictional, Judge, as I made my point in my brief. I do not have standing to contest or advocate for Karen Murphy's violation of her due process rights, I agree with you there. But in this case, I'm alleging that the court did not have jurisdiction originally to issue the no bond warrant. That's the whole point of this matter. But see, I don't understand the jurisdiction argument, because right or wrong, the judge had jurisdiction over the case, right? No doubt he had jurisdiction over the case. He did not have personal jurisdiction over Karen Miller, because the subpoena was not, it was supported by affidavit, and the return of the subpoena was not supported by affidavit. That's where he lacked personal jurisdiction over her. Obviously, he has jurisdiction over the case. Again then, I'll go back to my standing. Do you have standing to raise this? How do I have standing to raise this? Because she's got, you're saying she has an argument. Because the next point of my argument is, is that by ignoring the personal jurisdiction over the defendant, he issued a no bond warrant, and in essence, became the part and parcel, weighed in on the prosecutor's side. He did something that was improper in favor of the prosecution, i.e. get their victim in to testify. That's where the due process for Granasik is involved. And I hope I made that point specific in my brief, because I know the state raised that particular point on the standing. We don't have standing to object to Karen Miller's violation of her due process rights. What we do have standing to object is Granasik's, and we're saying that by Judge Bermuda, ignoring Rule 12, ignoring Supreme Court Rule 231, issuing a no bond warrant, is he weighing in on the state side to- How did he weigh in on the state side? I mean, did he know what this woman was going to testify to? Well, he knew she was the victim, the accuser. But he didn't know what she was going to say. Are you suggesting- Well, he helped the state to proceed with their case by acting ex parte, if you will, because he didn't have jurisdiction to do what he did. So therefore, he acted improperly in helping the state to prove their case. And that's the whole point of this judicial impropriety argument. You don't think a trial judge has the right to control his docket, keep this case moving? Absolutely. And in this case, a witness appears to be relatively hesitant to show up, and he's thinking, I'm not going to continue this again. Sheriff, go get her, and call us when you've got her, and we'll reconvene the court. I agree with you, Judge Schmidt. Is that what he did? No, that's not what he did, because he ignored the rules as to how you're going to proceed about this. What I'm advocating in the court is that what he should have done was ask what Mr. Brown preferred, if he could bring the witness in, and Mr. Brown make a motion to continue. Mr. Brown said nothing, and Judge Bermuda did everything. And if the judge could have granted time to bring the witness in, or Mr. Brown could have asked for a rule to show cause, or Judge Bermuda could have said, file a rule to show cause, I'll give you a continuance. That's what Rule 231 is all about. In the middle of a trial, when you need evidence or evidence is not available, the court can give a short continuance. Judge Bermuda even said that. So he ignored 231. He ignored the rule to show cause, which I cited in my brief as in the criminal code, Section 115, 12, 115, I believe. What's the rule say happens if the judge ignores the rule to show cause? What's the rule say? Yeah. Well, Rule 231 says that he can give a short continuance to produce the evidence. What's the rule say happens if he doesn't do that, and he does what Bermuda did? I don't know. It doesn't say anything. Now, I'll agree with you on this, Judge Schmidt, that had the state's attorney, Brown, said, Judge, I'm asking you to issue a warrant for a pick-her-up right now, and you do that, from what I've read, that would be okay. But that's not what happened. What happened was he acted unilaterally, ex parte, sua spente, without a motion in front of the court. Excuse me. So, anyway, I did not get to all of my points, but the last point I wanted to make in my two minutes is that this makes a big difference because the evidence, Judge Bonilla said the evidence was overwhelming. I'm submitting that it was not overwhelming. There was a dispute, not a dispute, but a credibility problem between the victim and the occurrence witness. The occurrence witness said when she was struck, she stood there. The victim, or accuser, said she fell down on the ground. Judge Bonilla found it a grace. It was the aggressor because he used the C word. But the C word was not directed against the accuser. It was directed against Kylie Murphy, the bartender. Kylie Murphy said that he called her a dirty, effing C word. The aggressor says, no, I'll take the noun, but not the adjectives. So that's what he testified to. So he testified he was falling back when she grabbed his arm. They said no, nobody grabbed his shoulder. And then he turned and struck. May have been intemperate, but the question of fact is, was his arm grabbed? Was he falling down? Was his phone flying off of his arms? So when you talk about harmless error, which is what the state is going to say, the more overwhelming the evidence, the less harmful the error. Obviously, the closer the evidence, the more harmful the error. I'm suggesting that the evidence in this case is not so overwhelming as to make any error harmless, especially a constitutional error confrontation. I'm done. Mr. Laird. May it please the court, counsel. Let me just begin with the summary of the evidence. Mr. Grissnick was waiting for his food order. They had this confrontation between the waitress near Murphy and Grinesic. And then a woman in the back walks behind Grinesic and just says, it's time for you to leave. Grinesic turned around and punched her in the mouth. And that's what the victim and Murphy testified to. The defendant even admitted when he testified that he intentionally struck the person behind him. He didn't know who it was, but he thought his excuse was somebody was pulling me backwards. I have a bad back. I didn't want to fall down, so I struck out. But he says he intentionally struck the person. That's overwhelming evidence of an admission right there, along with the victim's and the bartender's testimony. So Bermuda was right that the evidence was overwhelming in this case. He's the judge of the credibility of the witnesses. Certainly he found the two witnesses credible and the defendant's testimony not so credible. That leads me to the three issues about cross-examination and redirect examination. Usually the standard of review is abuse of discretion. But the defendant frames the issue as a constitutional issue. I believe it's really an abuse of discretion standard. You can apply either standard and we get to the same result of a conviction for the defendant here. Regarding the cross-examination of Carly Murphy about her recent incarceration and pending criminal charges, first, that issue was forfeited because the defense counsel did not make an offer of proof below. Furthermore, I believe this was an impeachment on a collateral matter. It had nothing to do with the case or the testimony of the witness. And even if there was error, it was harmless beyond a reasonable doubt. Same with the next issue, cross-examination about Murphy's drug addiction.  I make a substantive argument in my brief, I just refer that to you to look at. But right now I'm just going to say harmless beyond a reasonable doubt, affirm his conviction. The fifth issue that we're on is the redirect examination about Carly Murphy's ability to recall the circumstances that happened at the bar. While Judge Vermilla did not actually state that he was allowing it because he said that, if I recall correctly, that he was going to allow redirect examination on this issue because the defendant had opened the door on cross-examination about testing Murphy's testimony about her ability to recall. And this was the prosecution's purpose in asking Murphy about how many drinks the defendant had, not to rebut anything the defendant may say. She was simply testifying to occurrences that happened and how accurate they were. Even if there was error again, I ask you to find harmless error. Regarding the subpoena for the victim, Karen Miller, of course the defendant does not have standing to raise this issue. I'm sure the defendant would have liked Karen Miller not to show up and testify because she was the victim here and she had the most powerful testimony. Carly Murphy had the other problem. She was impeached with the prior conviction. But the victim's testimony alone here and Rene Sigg's admission is overwhelming evidence of his guilt. So Judge Vermilla did nothing wrong here. The fact that the subpoena was a fax copy and not notarized has nothing to do with whether the court had needs is that the witness received the subpoena and the witness had knowledge of the subpoena. That's what gives the trial court personal jurisdiction over a person that's not a defendant. And here the evidence is overwhelming that Karen Miller knew about the subpoena, knew that she had to show up on Monday. She did not show up and the trial judge correctly ordered a bench warrant and she came and testified. Well, does a judge or magistrate have to have personal jurisdiction over somebody to issue a warrant for their arrest? They would need probable cause. They don't need personal jurisdiction. But just the technical rules that defense counsel cites don't have to be completed for the trial judge to issue the subpoena and for the subpoena to have the effect of giving personal jurisdiction over a witness. It's the knowledge and reception right there that establishes personal jurisdiction and that's what occurred in this case. If you don't have any other questions, I'd ask that you affirm the defendant's conviction. I think so. Thank you. And Mr. Callahan, you were about to ask. Respectfully, members of the panel, I disagree with the state. The whole point of process in the Supreme Court rules do require personal jurisdiction before you issue a rule to show cause or a warrant in this matter. So therefore, we're not talking about probable cause to arrest somebody for a crime or anything like that. We're talking about a witness who has been subpoenaed. The case law that I've cited in the Supreme Court rules state specifically that the process must be supported by an affidavit. It must be notarized. If it's not notarized, it's not an affidavit. It's not supported properly. Therefore, the court lacked jurisdiction. And when the court then, lacking jurisdiction, brings in a witness to testify, it's acting on the behest of the state. That's my point. And I'd like to cite two things. One, if you buy my argument that Judge Vermilla acted extra-judicially, then that error is not harmless. It's never harmless error. The case I cited, the Kildare case, makes that specific point, that it is not harmless error. No matter how overwhelming the evidence is, you get a redo. And that's what the village of Kildare teaches us. So therefore, regardless of the overwhelming evidence, if you buy my argument that Judge Vermilla acted extra-judicially, then it's not harmless error. Furthermore, the last thing I'd like to do is cite a case from this court. Not only from this court, but by Mr. Grimesek when he was practicing law. It's People vs. Clutes. It's reported at 239 Illinois 3rd, 587, 3rd District, 1993, Judge Slater. In a case right out of Will County involving Judge White, who is now retired. Judge White, the state invested. Judge White says, wait a minute. He impermissibly acted as an advocate when he prompted the state to seek a contingency to prevent additional evidence after the proof had been closed. The court noted that the state, most importantly, did not move to re-open the proofs. That's fairly close to what we have here. And Justice Slater basically cited the rule that, to paraphrase it, Caesar's life must be a meandering approach. And he said, and I'll end with the quote from Justice Slater, it's the judge's duty to see that justice is done and where justice is liable to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued. It is his duty to interpose and either by suggestion to counsel or an examination conducted by himself, avoid the miscarriage of justice. But in so doing, he must not forget the function of a judge and assume that of an advocate. That's from this court. And I'm asking that that case be followed because I believe it's very similar, and I believe that regardless of how overwhelming the evidence, Mr. Ganesic, due process requires a do-over. So I'm asking you to send this case back to Joliet for a redo. Thank you. Thank you, Mr. Califf. That's both of your arguments today. We will take this matter under its final reading. Thank you.